UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAMED MARJANJOU, A-095-682-286,<br><br>Petitioner,<br><br>v.<br><br>WARDEN OF THE GOLDEN STATE<br>ANNEX DETENTION FACILITY, et al.,<br><br>Respondents. | No.  1:25-cv-01580-DC-EFB (HC)<br><br>ORDER AND FINDINGS AND<br><u>RECOMMENDATIONS</u> |

Petitioner is a native and citizen of Iran, currently in the custody of Immigration and Customs Enforcement (ICE), who has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.  ECF No. 1.  Currently before the court are respondents' amended motion to dismiss (ECF No. 12) and petitioner's request for preliminary injunctive relief of either release or a bond hearing on his due process claims.  ECF Nos. 11, 19.  For the following reasons, the court recommends that respondents' motion be DENIED and petitioner's request for injunctive relief be GRANTED in the form of a bond hearing.

**I.      Factual and Procedural Background**

Petitioner is a citizen of Iran who entered the United States in March 2001.  ECF No. 9-1 at 6.  Petitioner was admitted under the Visa Waiver Program after presenting a fraudulent Spanish passport.  *Id.*  In August 2006, petitioner was convicted in state court of corporal injury and false imprisonment.  *Id.* at 7, Ex. A.  In February 2007, DHS issued petitioner a notice of referral to an immigration judge (IJ) to adjudicate petitioner's application for asylum.  *Id.* at 7.  In October 2007, petitioner was convicted in federal court of false use of a passport.  *Id.* at 9, Ex. B.  In May 2008, the IJ found petitioner's claim for asylum to not be credible and ordered him

removed to Iran.  *Id.* at 10, Ex. D.  According to petitioner, he was detained after that order but subsequently released within 90 days after the Government failed to obtain travel documents from Iran.  ECF No. 19 at 2.

On or around January 29, 2012, petitioner left the United States; he applied for admission back into the United States the next day, claiming he was a lawful permanent resident.  *Id.* at 12.  Because petitioner had no legal documents to enter the United States, he was arrested by Customs and Border Protection (CBP) and subsequently paroled into the United States for purposes of criminal prosecution.  ECF No. 9-1 at 12.  In April 2012, he was convicted in federal court of attempted entry after deportation.  *Id.* at 13, Ex. C.  Petitioner was detained by ICE, and subsequently released in 2012 under supervision, in part due to the Government's inability to remove petitioner to Iran.  ECF No. 19 at 3.

In January 2013, petitioner filed a motion to reopen his 2008 removal order; the IJ denied petitioner's motion, but in September 2014, the Bureau of Immigration Appeals (BIA) overturned the denial on appeal.  ECF No. 9-1 at 14, Exs. D and E.  In June 2016, the IJ terminated the asylum proceedings, because both petitioner and DHS stipulated that petitioner had left the United States after his March 2001 admission under the Visa Waiver Program, and was currently in the United States after having been paroled into the country.  *Id.* at 15, Ex. F.

On June 1, 2017, DHS placed petitioner into removal proceedings before an IJ, charging him as inadmissible under section 212(7)(A)(i)(I) of the Immigration and Nationality Act (INA).  *Id.* at 17.  On June 20, 2025, petitioner was re-detained by immigration officers and has remained in detention without a bond hearing since that time.  *Id.* at 19; ECF No. 19 at 3.  Petitioner's final removal order to Iran was issued on January 12, 2026.  ECF No. 19 at 2; ECF No. 12 at 2; ECF No. 13 at 6, Ex. A.  Petitioner waived his right to appeal to the BIA.  ECF No. 13 at 6, Ex. A.

Petitioner filed a petition for writ of habeas corpus on November 18, 2025.  ECF No. 1.  Respondents subsequently filed a motion to dismiss, arguing that this court did not have jurisdiction because petitioner's removal order was, at that time, not yet final.  ECF No. 9.  Petitioner opposed that motion (ECF No. 10) and filed a motion for a temporary restraining order (TRO) and preliminary injunction on January 16, 2026.  ECF No. 11.  On that same date,

respondents opposed petitioner's motions and filed an amended motion to dismiss based on petitioner's final removal order.  ECF No. 12.  The District Court denied the motion for a TRO without prejudice in a minute order and referred the motion for preliminary injunction to this court.  ECF No. 14.

This court referred the matter for appointment of counsel, and counsel filed a reply to the motion for injunctive relief and an amended opposition to respondents' motion to dismiss.  ECF No. 19.  Now before the court are respondents' amended motion to dismiss and petitioner's request for preliminary injunctive relief of either release or a bond hearing on his due process claims.

## II.    Legal Standards

### A.  Motion to Dismiss

Respondents maintain that this court does not have jurisdiction over petitioner's due process claims.  Federal district courts are courts of limited jurisdiction.  Article III, § 1 of the United States Constitution provides that the judicial power of the United States is vested in the Supreme Court, "and in such inferior Courts as the Congress may from time to time ordain and establish." Congress therefore confers jurisdiction upon federal district courts, as limited by U.S. Const. Art. III, § 2. *Ankenbrandt v. Richards,* 504 U.S. 689, 697-99(1992).  Lack of subject matter jurisdiction may be raised at any time by either party or by the court. *Attorneys Trust v. Videotape Computer Products, Inc.,* 93 F.3d 593, 594-95 (9th Cir.1996).  Dismissal is appropriate under Rule 12(b)(1) when a court lacks subject matter jurisdiction over a plaintiff's claim.  Fed. R. Civ. P. 12(b)(1).

### B.  Motion for Preliminary Injunction

To obtain preliminary injunctive relief, the plaintiff or petitioner must show (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008).  Where, as here, the Government is the opposing party to a request a preliminary injunction, the third and fourth factors "merge" in the court's analysis. *Nken v. Holder*, 556 U.S. 418, 435 (2009); *Drakes Bay Oyster Co. v. Jewell,*

3

747 F.3d 1073, 1092 (9th Cir. 2014).  The first factor, "[l]ikelihood of success on the merits[,] is a threshold inquiry and is the most important factor." *Simon v. City & Cnty. of San Francisco*, 135 F.4th 784, 797 (9th Cir. 2025) (quoting *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020)).  "[I]f a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted).

### III.    Analysis

#### A.  Jurisdiction of This Court

The Ninth Circuit has held that "district courts retain jurisdiction under 28 U.S.C. § 2241 to consider challenges to immigration detention that are sufficiently independent of the merits of the removal order." *Lopez-Marroquin v. Barr,* 955 F. 3d 759 (9th Cir. 2020). (citations omitted). It is undisputed that petitioner is now subject to a final removal order to Iran, and that petitioner has waived his right to appeal that final order.  ECF No. 19 at 2; ECF No. 12 at 2; ECF No. 13 at 6, Ex. A; 8 C.F.R. § 1003.39.  Here, however, petitioner is not challenging the merits of his removal order,[1] but rather the absence of due process in his detention without a bond hearing.  As such, this court finds that it has jurisdiction, and respondent's motion to dismiss on jurisdictional grounds should be denied.

#### B.  Basis of Petitioner's Detention

As a result of the final removal order, petitioner's detention is now governed by 8 U.S.C. § 1231.  "Section 1231(a) applies to detention after the entry of a final order of removal" and "governs detention during a ninety-day 'removal period' after the conclusion of removal proceedings." *Avilez v. Garland*, 69 F.4th 525, 530-31 (9th Cir. 2023).  The "removal period" commences "on the latest of either (1) the date a noncitizen's 'order of removal becomes administratively final.' (2) the date of a court's final order, if the noncitizen's removal order is

---

[1] The parties agree that petitioner is not challenging his final removal order, but only his detention.

judicially reviewed and this court status the noncitizen's removal, or (3) the date the noncitizen is released from criminal detention or confinement." *Id.* at 531 (quoting 8 U.S.C. § 1231(a)(1)(B)(i)-(iii).   Here, petitioner's order of removal became administratively final on January 16, 2026, the date on which both petitioner and respondents waived any right to appeal. ECF No. 13 at 6, Ex. A.  Thus, petitioner is still within the 90-day removal period contemplated by the statute.

"During the removal period, the Attorney General *shall* detain the alien."  8 U.S.C. § 1231(a)(2)(A) (emphasis added).  Thus, detention is mandatory during the removal period.  *See Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022); *Zadvydas v. Davis,* 533 U.S. 678, 698 (2001) (finding that section 1231(a) "mandates" detention during the 90-day removal period); *Aguilar Garcia v. Kaiser*, 2025 WL 2998169, *2 (N.D. Cal., Oct. 24, 2025).  "Section 241(a) of the Immigration and Nationality Act (INA), codified at 8 U.S.C. § 1231(a), authorizes the detention of noncitizens who have been ordered removed from the United States."  *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 575 (2022).  "In particular, § 1231(a)(6) provides that after a 90-day 'removal period,' a noncitizen 'may be detained' or may be released under terms of supervision."  *Id.*  "After the removal period expires, the Government 'may' detain only four categories of people: (1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those it determines 'to be a risk to the community'; and (4) those it determines to be 'unlikely to comply with the order of removal.' "  *Id.* at 578–79 (quoting 8 U.SC. § 1231(a)(6)).

Because petitioner is now under a final removal order that he has opted not to appeal, this matter is in a different posture than it was at the time petitioner filed his petition for habeas corpus.  The parties differ on what the final removal order means for resolution of the petition.  Respondents argue that because petitioner is now detained pursuant to section 1231, the time he spent in detention without a bond hearing before the final removal order is irrelevant.  ECF No. 12.  Rather, according to respondents, the clock essentially re-set on January 16, 2026 and petitioner is still in the 90-day removal period contemplated by the statute.  8 U.S.C. § 1231(a)(6).  *Id.* at 2-3.  As a result, respondents maintain, petitioner is not entitled to injunctive relief, and his

5

petition should be dismissed. *Id.*

Petitioner, on the other hand, argues that regardless of the basis of his detention, he has been detained without a bond hearing since June 20, 2025, that there is no indication that the Government will be able to remove him to Iran, and that such detention violates his due process rights. Petitioner relies on *Zadvydas v. Davis*, 533 U.S. 678 (2001), where the Supreme Court addressed a challenge to prolonged detention under section 1231(a)(6) by noncitizens who "had been ordered removed by the government and all administrative and judicial review was exhausted, but their removal could not be effectuated because their designated countries either refused to accept them or the United States lacked a repatriation treaty with the receiving country." *Prieto-Romero v. Clark*, 534 F.3d 1053, 1062 (9th Cir. 2008) (citing *Zadvydas*, 533 U.S. at 684-86). The Supreme Court "read an implicit limitation" into the statute "in light of the Constitution's demands," holding that section 1231(a)(6) does not authorize indefinite detention and "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." *Zadvydas*, 533 U.S. at 689. Rather,

> [a]fter [a presumptively reasonable] 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.* at 701. Here, petitioner points out that, regardless of the fact that he is still in the 90-day removal period contemplated by section 1231, he has been in detention for more than six months. In addition, petitioner argues that he is unlikely to be removed to Iran in the reasonably foreseeable future, given the inability of the Government to previously effectuate his removal to Iran. Accordingly, petitioner maintains that he is, at a minimum, entitled to a bond hearing. ECF No. 19.

////

Neither party has cited to a case such as this, where a petitioner has been detained for longer than six months, but is still within the 90-day removal period contemplated by section 1231 because a removal order became final during the period of detention, and after petitioner filed his petition for habeas corpus. This court, however, is aware of at least one case, *Doe v. Becerra*, 697 F. Supp. 3d 937, 943-945 (N.D. Cal. 2023), where, as here, the basis of petitioner's detention changed to section 1231 after he filed his petition for habeas corpus. In response to the Government's argument that the petitioner's detention was moot in light of the change in the basis for his detention, the court found that:

> [A] live controversy exists because Doe remains detained and [] the Court's conclusion in this case is based on the length of Doe's detention without a hearing, not the statutory basis for his detention. . . . The IJ's final order of removal may have started the clock for the Government to take a different type of action, but it did not reset the clock as to the time Doe has been detained without a bond hearing.

*Id.* As such, the court determined it was able to reach the merits of petitioner's due process claim and order a constitutionally compliant bond hearing. *Id.* at 948.

Even though the facts are not completely square with the instant case (in *Doe,* for example, the petitioner's final order of removal was withheld under the Convention Against Torture (CAT)), this court finds the reasoning of *Doe* persuasive and holds that it has jurisdiction to consider petitioner's due process claims. Even though the basis for petitioner's detention has changed since his petition was filed, it is undisputed that petitioner has in fact been detained without a bond hearing since June 2025, and that he was detained for more than six months prior to the issuance of the final removal order. The court finds "that the shift in the statutory basis governing [petitioner's] detention does not negate his constitutional rights nor substantively change the applicable due process analysis. While statutory justification for [petitioner's] detention has shifted, nothing has changed as a practical matter – his time behind bars continues to increase without any showing by Respondents that his civil detention is necessary to achieve the Government's non-punitive ends." *Doe*, 697 F. Supp. 3d at 945. Thus, the court will consider petitioner's request for injunctive relief.

////

7

### C.  Preliminary Injunction on Due Process Claims

Petitioner claims in his petition that he is detained in violation of his substantive and procedural due process rights, and it is on those claims that petitioner seeks preliminary injunctive relief of either a bond hearing or release.  ECF Nos. 1 and 19.  For the reasons below, the court recommends that petitioner's request for preliminary injunctive relief in the form of a bond hearing be granted.

### 1.  Likelihood of Success on the Merits

#### a.  Substantive Due Process Rights

"Section 241(a) of the Immigration and Nationality Act (INA), codified at 8 U.S.C. § 1231(a), authorizes the detention of noncitizens who have been ordered removed from the United States." *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 575 (2022).  "In particular, § 1231(a)(6) provides that after a 90-day 'removal period,' a noncitizen 'may be detained' or may be released under terms of supervision."  *Id.*  "After the removal period expires, the Government 'may' detain only four categories of people: (1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those it determines 'to be a risk to the community'; and (4) those it determines to be 'unlikely to comply with the order of removal.' "  *Id.* at 578–79 (quoting 8 U.SC. § 1231(a)(6)).

As discussed *supra*, the Supreme Court has held that section 1231(a)(6) does not authorize indefinite detention and "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." *Zadvydas*, 533 U.S. at 689.  The Court found that six months was a presumptively reasonable detention period.  *Id.* at 701.  Here, petitioner is detained pursuant to 8 U.S.C. § 1231(a)(6) and although the basis for his detention has changed during his detention, he has been detained beyond the presumptively reasonable six-month detention period.

Respondents argue that petitioner has not shown that there is no significant likelihood of removal in the reasonably foreseeable future, because petitioner is still within the 90-day removal period authorized by section 1231.  Respondents are incorrect.  To begin with, petitioner has averred – and respondents have not disputed – that petitioner was previously released from

custody twice, partially on the basis that the Government was unable to secure travel documents to effect his removal to Iran.  ECF No. 19.   Respondents have made no argument that petitioner is now more likely to be removed to Iran, that his removal to Iran is imminent, nor that any travel documents have now been issued.  Additionally, since the parties have filed their briefs, the diplomatic situation between the United States and Iran has obviously changed, which may further call into question petitioner's removability to Iran.

Furthermore, numerous courts have held that the burden-shifting scheme of *Zadvydas* is only applicable to those noncitizens who had been detained and never released following an order of removal.  *Zadvydas*, 533 U.S. at 701.  Where, as here, petitioner was issued an order of removal, detained, and subsequently released and then redetained, "it is [ICE's] burden to show a significant likelihood that the alien may be removed" pursuant to 8 C.F.R. § 241.13.  *Escalante v. Noem*, No. 9:25-CV-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025); *see also Roble v. Bondi*, No. 25-CV-3196 (LMP/LIB), 2025 WL 2443453, at *4 (D. Minn. Aug. 25, 2025) ("[T]he regulations at issue in this case place the burden on ICE to first establish changed circumstances that make removal significantly likely in the reasonably foreseeable future."); *Abuelhawa v. Noem*, No. 4:25-CV-04128, 2025 WL 2937692, at *8 (S.D. Tex. Oct. 16, 2025) ("[U]pon revocation of release, the Government bears the burden to show a significant likelihood that the alien may be removed in the reasonably foreseeable future."); *Nguyen*, 788 F. Supp. 3d at 150; *Vu v. Noem*, No. 1:25-CV-01366-KES-SKO (HC), 2025 WL 3114341, at *5 (E.D. Cal. Nov. 6, 2025).  Here, respondents have made no showing that there is a significant likelihood that petitioner will be removed to Iran.  ECF No. 12.  On the record before the court at this stage, therefore, petitioner has shown a likelihood of success in this claim.

### b.  Procedural Due Process Rights

Petitioner has also shown by a preponderance of evidence that his detention without a bond hearing violates his rights to procedural due process under the Fifth Amendment.  *See* ECF No. 1.  To determine whether detention violates a petitioner's Fifth Amendment procedural due process rights, courts weigh: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the

probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). For the reasons set forth in the District Court's November 21, 2025 Order in *Cajina v. Wofford*, No. 1:25-CV-01566-DAD-AC (HC), 2025 WL 3251083, at *4 (E.D. Cal. Nov. 21, 2025), and December 4, 2025 Order in *O.A.C.S. v. Wofford*, No. 1:25-CV-01652-DAD-CSK (HC), 2025 WL 3485221, at *3 (E.D. Cal. Dec. 4, 2025), petitioner has shown that he has a substantial protected liberty interest in his freedom from detention. *See* ECF Nos. 1 and 19; *see also Ortega v. Noem*, No. 1:25-cv-01663-DJC-CKD, at 6 (E.D. Cal. Dec. 8, 2025); *Souza v. Robbins*, No. 1:25-CV-01597-DJC-JDP, 2025 WL 3263897, at *3 (E.D. Cal. Nov. 23, 2025). Since petitioner's release after his initial entry to the United States, petitioner developed "enduring attachments of normal life" legally indistinguishable from those experienced by a criminal parolee. *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972); *see also O.A.C.S.*, No. 1:25-CV-01652-DAD-CSK (HC), 2025 WL 3485221, at *3.

Petitioner has also demonstrated that the second *Mathews* factor weighs in his favor. Without an individualized bond hearing, "the risk of erroneous deprivation," *see Mathews*, 424 U.S. at 335, through petitioner's summary detention is considerable. Detention is only justified when the noncitizen poses a flight risk or a danger to the community. *See* 8 U.S.C. § 1226(a); *Zadvydas*, 533 U.S. at 690. Without an individualized bond determination by a neutral factfinder in order to determine whether his continued detention is legally justified, the risk of erroneous deprivation of petitioner's protected liberty interests is great. *See Cajina*, No. 1:25-CV-01566-DAD-AC (HC), 2025 WL 3251083, at *4; *see also Demore*, 538 U.S. 510; *Morales-Flores*, No. 1:25-CV-01640-TLN-EFB, 2025 WL 3552841, at *5; *R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO (HC), 2025 WL 2617255, at *4 (E.D. Cal. Sept. 9, 2025); *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Correspondingly, the probative value of the additional procedural safeguards petitioner seeks—a determination of petitioner's bond-worthiness based on individualized facts, by a neutral factfinder—is high. *See Morales-Flores*, No. 1:25-CV-01640-TLN-EFB, 2025 WL 3552841, at *5; *R.D.T.M. v. Wofford*,

No. 1:25-CV-01141-KES-SKO (HC), 2025 WL 2617255, at *4.

Petitioner has also shown that the third *Mathews* factor weighs in his favor.  "[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions."  *Hernandez*, 872 F.3d at 994. The effort and cost required to provide petitioner with procedural safeguards are minimal.  *See Cajina,* No. 1:25-CV-01566-DAD-AC (HC), 2025 WL 3251083, at *5; *Khan v. Noem, et al.*, No. 1:25-CV-01411-EPG-HC, 2025 WL 3089352, at *7 (E.D. Cal. Nov. 5, 2025) ("In immigration court, custody hearings are routine and impose a 'minimal' cost." (citations omitted)).

Accordingly, the court finds that respondents' interest in detaining petitioner without an individualized bond determination, at a hearing before a neutral factfinder, is low and does not outweigh petitioner's substantial liberty interest or the risk of the erroneous deprivation of same. Petitioner has thereby shown by a preponderance of evidence that his detention violates his rights under the due process clause of the Fifth Amendment, entitling him to relief on the procedural due process claim of his petition.

### 2.  Irreparable Harm

Petitioner will suffer irreparable harm in the absence of preliminary injunctive relief.  "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"  *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).  Moreover, "[t]he Ninth Circuit has recognized 'irreparable harms imposed on anyone subject to immigration detention' including 'the economic burdens imposed on detainees and their families as a result of detention.'"  *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017); *see also Rodriguez*, 779 F. Supp. 3d at 1262.  Petitioner has thus established irreparable harm.

////

////

////

11

### 3.    Balance of the Harms and Public Interest

The final two *Winter* factors merge when the government is the nonmoving party, *Baird*, 81 F.4th at 1040, and respondents do not dispute that these factors weigh in favor of the issuance of a temporary restraining order.  Broadly, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002 (internal quotations and citations omitted).  "The government also cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Baird*, 81 F.4th at 1042 (internal quotations and citations omitted).  Moreover, specific to the harms and public interest implicated by unlawful immigration detention, the analysis of the *Pinchi* court is persuasive here:

> "[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Jorge M. F.*, 2021 WL 783561, at *3 (cleaned up); *see also Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 838 (9th Cir. 2020) (quoting *Padilla v. Immigration & Customs Enforcement*, 953 F.3d 1134, 1147–48 (9th Cir. 2020)) ("It is always in the public interest to prevent the violation of a party's constitutional rights."); *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). As other courts in this district have concluded under similar circumstances, the potential harm to Ms. Garro Pinchi is significant—she faces immediate and potentially prolonged ICE detention, putting her family's financial survival and her already precarious health at risk— while the potential harm to the government is minimal. The only potential injury the government faces is a short delay in detaining Ms. Garro Pinchi if it ultimately demonstrates to a neutral decisionmaker by clear and convincing evidence that her detention is necessary to prevent danger to the community or flight. *See Jorge M. F*, 2021 WL 783561; *Diaz*, 2025 WL 1676854. The government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). "Faced with ... a conflict between minimally costly procedures and preventable human suffering, [the Court has] little difficulty concluding that the balance of hardships tips decidedly in plaintiffs' favor." *Singh*, 2025 WL 1918679, at *9 (quoting *Hernandez*, 872 F.3d at 996) (cleaned up).

*Pinchi*, 792 F.Supp.3d at 1037-38.  Thus, the court concludes that the equities and public interest weigh in favor of petitioner.

////

////

### D. Injunctive Relief

Petitioner requests injunctive relief of either immediate release or a bond hearing. ECF No. 19. Given the circumstances present here, including petitioner's past criminal record and the change in the basis of his detention since his final removal order, the court finds that injunctive relief of a constitutionally compliant bond hearing is appropriate here. *See, e.g., Doe,* 697 F.Supp.3d at 948 (ordering bond hearing within fourteen days); *Arshakyam v. Warden of California Detention Center*, 2026 WL 143143, *5 (E.D. Cal., Jan. 20, 2026) (ordering bond hearing within seven days).

## IV. Recommendations

For the foregoing reasons, the court RECOMMENDS that:

1.  Respondents' amended motion to dismiss be DENIED.

2.  Petitioner's request for preliminary injunctive relief in the form of a bond hearing be GRANTED.

3.  Within seven days from the date of this order, respondents be ORDERED to provide petitioner with a constitutionally compliant bond hearing before an immigration judge. Respondents shall permit petitioner to be represented by counsel and shall bear the burden of proving by clear and convincing evidence that petitioner is a flight risk or danger to the community.

4.  Respondents be ENJOINED AND RESTRAINED from transferring petitioner to any facility other than the Golden State Detention Center.

5.  Respondents be ENJOINED AND RESTRAINED from removing petitioner to any country other than Iran.

6.  Within 30 days of the date of this order, petitioner be ORDERED to file an amended petition for writ of habeas corpus, reflecting the change in the basis of petitioner's detention and any changes in petitioner's claims as a result.

7.  Within 15 days of the amended petition for writ of habeas corpus, respondents be ORDERED to file a response.

13

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: April 6, 2026

_____
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

14